IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DEMETRIUS LEE BATTLE,
    Plaintiff,

v.                                             Case No. 3:20cv5494/LAC/ZCB

SGT. HARRIS, et al.,
    Defendants.
_____/

# REPORT AND RECOMMENDATION

This is a *pro se* prisoner civil rights case brought under 42 U.S.C. § 1983. Plaintiff has sued nine corrections officers with the Florida Department of Corrections ("FDOC") and one nurse.[1] Plaintiff claims that the Defendants violated both his First and Eighth Amendment rights. (Doc. 9). One of the Defendants, Joshua Speer, has moved for summary judgment on Plaintiff's Eighth Amendment excessive force claim. (Doc. 44). Plaintiff has responded in opposition. (Doc. 51). For the reasons below, Defendant Speer's motion for summary judgment should be denied.

---

[1] Two FDOC officers are named in the operative complaint—Sgt. Harris and movant Joshua Speer. The remaining eight defendants are unidentified John and Jane Does—corrections officers John Doe #1-6 and John Doe A, and Nurse Jane Doe A. (*See* Doc. 9). Defendant Speer is the only one who has been served with a copy of the summons and complaint.

1

## I.  Background

Plaintiff is an inmate at the Avon Park Correctional Institution. He has sued Defendant Speer under 42 U.S.C. § 1983 for retaliation and excessive force related to a use-of-force incident that occurred while Plaintiff was a prisoner at the Santa Rosa Correctional Institution ("SRCI"). (Doc. 9). The parties agree that the alleged incident involving Plaintiff and Defendant Speer occurred outside of SRCI Dormitory G on December 29, 2018. The parties disagree, however, about how force came to be used, how much force was applied, and the extent of Plaintiff's injuries.

### A.  Plaintiff's version of events

Plaintiff contends that a little before 8:00 a.m. on December 29, 2018, Defendant Speer and two other FDOC officers (Sgt. Harris and John Doe A) approached Plaintiff's cell in SRCI Dormitory B and stated, "Pack your property you're moving writ writer." (Doc. 9 at 11 ¶ 9). According to Plaintiff, "writ writer" is prison slang for an inmate who has filed grievances. (*Id.*). Prior to transporting Plaintiff to his new location—SRCI Dormitory G—Defendant Speer and the two other officers placed Plaintiff in "full-restraints (leg irons, waist chains, handcuffed to waist chains with black box)." (Doc. 9 at 11 ¶ 10). As the escort reached the entry to Dormitory G—"for no reason and without any prior provocation"—Sgt. Harris tripped Plaintiff, slamming him onto the concrete sidewalk. (*Id.*). As Plaintiff

lay fully restrained on the ground, Defendant Speer, Sgt. Harris, and John Doe A punched Plaintiff in his face and torso. (*Id.*). Next, John Doe A grabbed Plaintiff's head and repeatedly slammed it into the concrete sidewalk. (*Id.*). After the beating, the officers pinned Plaintiff to the ground, saying, "Grieve this." (*Id.*).

Plaintiff was then taken to medical for a post use-of-force examination. (*Id.* ¶ 11). The nurse who examined Plaintiff, Nurse Jane Doe A, "did not document [the] true severity of [Plaintiff's] injuries and swellings, but only cleaned a long cut under Plaintiff['s] eye." (*Id.*). Plaintiff's injuries were more severe than what the nurse noted. Instead of one minor abrasion, Plaintiff's injuries included "massive swellings and disfigurement" as well as permanent hearing loss. (*Id.* at 15 ¶ 10A).

Plaintiff's medical records reflect that, on January 1, 2019, Plaintiff complained of persistent headaches as well as neck and back pain following the December 29, 2018 use-of-force incident. His specific complaints are as follows:

> I was repeatedly beat in my face and my head was slam to the ground about 5 times on December 30, 2018 (two-days ago). Now I keep having flashing headaches like 5 or 6 headaches everyday. And my neck and back is very stiff and swollen like. So is there any very powerful pain medicine that can be given to me immediately. I also want to have my head scan for any permanent damages. Please. Thank you.

(Doc. 51-3 at 15). Plaintiff was examined that same day. To address Plaintiff's head, neck, and back pain, Plaintiff was prescribed Ibuprofen and instructed to return to medical if his symptoms worsened or persisted beyond ten days. (*Id.* at 13).

3

Approximately two weeks later, on January 16, 2019, Plaintiff put in another sick-call request, complaining of neck pain, recurring headaches, and lower spine problems. (*Id*. at 16). In the request, Plaintiff maintained that his symptoms began after the use-of-force incident during which his "head was slammed into the sidewalk a dozen times." (*Id*.). In response to this sick-call request, Plaintiff was examined on January 21, 2019, on an "Urgent" basis.² (*Id*.). Nearly one week later, on January 27, 2019, Plaintiff made another sick-call request as follows:

> My head is hurting and my ear has not regained correct hearing and is hurting with a sharp pain. I cleaned blood out of it for the last several weeks every (sic) since the 29th of December 2018 event whereas my head was slammed ear first repeatedly as well as my neck, my shoulder and lower spine and back has really been hurting. Can you please prescribe me something strong for pain.

(Doc. 51-3 at 17). On January 28, 2019, medical responded to this sick-call request as "Urgent." (*Id*.).

### B. Defendant's version of events

Defendant Speer's version of events is quite different. Defendant Speer says that he and Sgt. Harris were escorting Plaintiff to G Dormitory on the morning of December 29, 2018, when Plaintiff refused to walk as instructed. (Doc. 49-1 at 1). Instead of following instructions, Plaintiff "snatched away" from Sgt. Harris. (*Id*.).

---

² The date stamp on the sick-call request form allows medical personnel to select from one of three triage levels—Emergency, Urgent, or Routine. (*See* Doc. 51-3 at 16).

As Plaintiff "snatched away," Defendant Speer maintained his custodial grasp on Plaintiff and ordered Plaintiff to cease his actions. (*Id*.). Plaintiff kept resisting. (*Id*.). Consequently, Defendant Speer "utilized downward pressure to place [Plaintiff] on the ground in front of Gulf Dormitory. Once on the ground [Plaintiff] ceased his behavior and all force ceased." (*Id*.). One minute later, at 8:29 a.m., two other FDOC officers arrived with video recording equipment and began recording. (*Id*.). Plaintiff was then escorted to medical where he received a post use-of-force examination. (*Id*.). At 8:30 a.m., a prison nurse examined Plaintiff and noted a one-centimeter abrasion (with swelling but no bleeding) below Plaintiff's left eye. (Doc. 51-3 at 11) ("1 cm abrasion below left eye. . . swelling noted. I/m denies any other injury. I/m denies pain. Site cleansed. . . no actual bleeding noted."). No other injuries were observed, and Plaintiff did not complain of any pain. (Doc. 49-5 at 1-2).

## II.   Discussion

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248. When

deciding whether to grant summary judgment, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the non-movant." *Samples on Behalf of Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir. 1988); Fed. R. Civ. P. 56(c)(1)(A).

The central summary judgment question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. When answering that question, courts must view the evidence in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007). And the nonmoving party bears the burden of coming forward with sufficient evidence on each element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A mere "scintilla" of evidence is insufficient to meet that burden. *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004). At the summary judgment stage, the judge is "not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### A. There are genuine issues of material fact regarding Plaintiff's Eighth Amendment excessive force claim.

Defendant Speer argues that he is entitled to summary judgment on Plaintiff's Eighth Amendment excessive force claim. To determine what facts are "material" at the summary judgment stage, courts look to the substantive law. *Anderson*, 477

U.S. at 248. Completing that task here requires an examination of the law governing Eighth Amendment excessive force claims. Prison officials violate the Eighth Amendment prohibition against cruel and unusual punishment if they apply force "maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The "core judicial inquiry" in Eighth Amendment excessive force cases "is 'not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Bowden v. Stokely*, 576 F. App'x 951, 953 (11th Cir. 2014) (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)). To determine whether force was excessive, courts should consider the following factors: (1) the extent of any injury suffered by the prisoner; (2) the need for the application of force; (3) the relationship between that need and the amount of force used; (4) any effort made to temper the severity of a forceful response; and (5) the extent of the threat to safety of staff and inmates posed by the prisoner's conduct. *Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999).

Plaintiff alleges that Defendant Speer used excessive force by physically assaulting him without adequate provocation while he was fully restrained. He alleges he was tripped, punched in the face and torso, and that his head was slammed onto the concrete sidewalk, causing him massive facial swelling and permanent hearing loss.

Not so according to Defendant Speer. He claims to have used only as much force as was necessary to obtain compliance after Plaintiff refused to obey orders. Defendant Speer relies on his use of force report to support his version of events. The use of force report describes Plaintiff as being non-compliant and resisting Defendant Speer's commands.

Viewing Defendant Speer's and Plaintiff's conflicting evidence in the light most favorable to Plaintiff, there is sufficient evidence on each of the factors set forth above for a reasonable jury to conclude Defendant Speer used excessive force. Furthermore, viewing the evidence in Plaintiff's favor, he suffered more than *de minimis* injuries because of the excessive force. Plaintiff states he not only suffered massive swelling and facial disfigurement, but also persistent headaches, neck and back pain over a period of weeks, as well as permanent hearing loss.

The Court has been provided with no video evidence of the incident. Thus, what the Court is left with is Plaintiff's allegations on the one hand and Defendant Speer's statement on the other. Plaintiff says the incident unfolded in one way, and Defendant Speer says it unfolded in an entirely different way. Clearly, one side is telling the truth and the other is not. At the summary judgment stage, however, it would be inappropriate for the Court to make credibility determinations or to weigh the evidence. *See Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) ("It is not the court's role to weigh conflicting evidence or to make credibility

determinations; the non-movant's evidence is to be accepted for purposes of summary judgment."). That is true even if the Court "believes that the evidence presented by one side is of doubtful veracity" because "it is not proper to grant summary judgment on the basis of credibility choices." *Miller v. Harget*, 458 F.3d 1251, 1256 (11th Cir. 2006) (citation omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" *Anderson,* 477 U.S. at 255.

Because there is conflicting information in the record on material facts, the Court cannot grant summary judgment in favor of Defendant Speer. There are disputes about what precipitated the use of force, and there are disputes about how much force and what type of force was used by FDOC Defendants. There are also disputes about what injuries resulted from the force. Those disputes are about material facts, as opposed to minor or trivial details. Viewing the evidence in the light most favorable to Plaintiff, Defendant Speer unnecessarily and repeatedly struck him, without provocation. If things happened as Plaintiff says they did, then a reasonable jury could find that the amount of force used was excessive and that Plaintiff suffered injuries as a result.

Although a court may grant summary judgment where the "opposing parties tell two different stories, one of which is blatantly contradicted by the record," *Scott*, 550 U.S. at 380, this is not such a case. The Court has been provided with neither

9

video footage of the incident nor any statements from non-interested eyewitnesses. There is evidence in the record showing Plaintiff suffered injuries because of the incident. Additionally, Plaintiff has done more than rest on the allegations in his complaint—he has submitted a summary judgment opposition (complete with his own counter-affidavit, medical records, and sick-call requests) that show there are disputed issues of material fact in this case. The information in the record does not so blatantly contradict Plaintiff's version of events that no reasonable jury could be expected to believe it. *See Sears v. Roberts*, 922 F.3d 1199, 1208-09 (11th Cir. 2019) (finding that summary judgment could not be granted in favor of corrections officers when there were no video recordings and the evidence in the record consisted of statements from the defendants and contradictory statements by the plaintiff).

None of the cases cited by Defendant Speer alter that conclusion. First up is *Miles v. Jackson*, 757 F. App'x 828 (11th Cir. 2018) (per curiam). In that case, the prisoner admitted being non-compliant and evasive. *Id.* at 830. Here, however, Plaintiff claims to have been compliant and denies resisting Defendant Speer's efforts to move him from one dormitory to another. (Doc. 9 at 11 ¶ 10). Next is *Reed v. Mitchem*, 707 F. App'x 617 (11th Cir. 2017) (per curiam). *Reed* is unhelpful because it involved a district court's finding that a prisoner was not credible after a bench trial. *Id.* at 618. But the current case is at the summary judgment stage and not post-bench trial.

10

Similarly unpersuasive is Defendant Speer's reliance on *Oliver v. Warden*, 761 F. App'x 960 (11th Cir. 2019) (per curiam). In *Oliver*, there was video evidence clearly supporting the defendants' version of events. *Id.* at 965. On the contrary, the Court has no video evidence supporting Defendant Speer's version of events in this case. The next case cited by Defendant Speer is *Smith v. Secretary, Department of Corrections*, 524 F. App'x 511 (11th Cir. 2013) (per curiam). There, the court accepted Plaintiff's version of events as true but concluded that the amount of force alleged (i.e., twisting arms upwards and pressing against the wall) was an unactionable *de minimis* use of force. *Id.* at 513. That is not what we have here. Plaintiff has alleged more than *de minimis* use of force. Indeed, Defendant Speer's motion for summary judgment does not argue that Plaintiff has alleged only *de minimis* use of force.

Finally, Defendant Speer cites *Howard v. Memnon*, 572 F. App'x 692 (11th Cir. 2014) (per curiam). But that case is unhelpful. *Howard* involved a situation where the plaintiff's version of events was "blatantly contradicted by the record," while the defendants "presented evidence" establishing that force was applied to maintain and restore discipline. *Id.* at 695. That is not the situation here—Defendant Speer has not submitted evidence that is sufficient to "blatantly contradict" Plaintiff's allegations. Instead, the evidence submitted by Defendant Speer consists of his own statement in the use of force report completed regarding the incident. The

Eleventh Circuit has held that such evidence is generally insufficient to "blatantly contradict" a plaintiff's allegations because it does not "definitively establish[] what happened and what did not [happen]." *Sears*, 922 F.3d at 1208-09 (explaining that incident reports, affidavits, and other "documentary evidence [that] consists mainly of various forms of the[] [corrections officers'] own testimony" was insufficient to "blatantly contradict" the plaintiff's description of the incident); *see also Rivera v. LeBron*, 824 F. App'x 838, 842-43 (11th Cir. 2020) (per curiam) (reversing the district court's grant of summary judgment in favor of corrections officers when there was no video evidence and the evidence in the record primarily consisted of statements that "merely pit[ted] the correctional officers' word against an inmate's") (cleaned up).

When the evidence in the record is viewed in the light most favorable to Plaintiff (as the Court must do at the summary judgment stage), there is a "sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52. Accordingly, Defendant Speer is not entitled to summary judgment on Plaintiff's Eighth Amendment excessive force claim.

**B.     Defendant Speer is not entitled to summary judgment because of qualified immunity.**

Defendant Speer also argues he is entitled to summary judgment based on qualified immunity. There is no merit to this argument because the Court has determined that Defendant Speer is not entitled to summary judgment on the

12

underlying excessive force claim. As the Eleventh Circuit has explained, that ends the qualified immunity inquiry because:

> a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution . . . . There is simply no room for a qualified immunity defense when the plaintiff alleges such a violation.

*Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (cleaned up). Thus, if "the plaintiff has alleged facts sufficient to survive a motion to dismiss or a motion for summary judgment . . . . [then] that is the end of the inquiry." *Id.*; *see also Bowden*, 576 F. App'x at 955 (explaining that when there is a material dispute of fact as to an excessive force claim, summary judgment based on qualified immunity would be unwarranted); *Ash v. Landrum*, 819 F. App'x 770, 773 (11th Cir. 2020) (per curiam) (same). Because the Court has determined that Plaintiff's excessive force claim is sufficient to survive summary judgment, there is no basis for granting summary judgment because of qualified immunity.

### C. Plaintiff's claim for declaratory relief is moot.

In his request for relief, Plaintiff asks the Court to "issue declaratory judgment" that (1) all parties acted "under color of law" (2) that Defendants engaged in "cruel and malicious acts of physical abuse of Plaintiff" (3) that Defendants violated Plaintiff's First and Eighth Amendment rights, and (4) that Defendant's

13

actions constituted "assault and battery under state law." (Doc. 9 at 10 § VII). This request is problematic for two reasons. First, it appears that Plaintiff seeks here what he could have received had he moved for summary judgment—the Court's finding that Plaintiff is entitled to judgment as a matter of law on his claims. Plaintiff has not so moved. A prayer for relief in a complaint is not the appropriate mechanism for seeking summary judgment. *See* Fed. R. Civ. P. 56; N.D. Fla. Loc. R. 56.1.

Second, because Plaintiff has been transferred from the prison where the alleged constitutional violations occurred to another facility, his request for prospective relief is now moot. *See Smith v. Allen*, 502 F. 3d 1255, 1267 (11th Cir. 2007) ("[A] transfer or a release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief."), *abrogated on other grounds by Sossamon v. Texas*, 563 U.S. 277 (2011); *Zatler v. Wainwright,* 802 F.2d 397, 399 (11th Cir. 1986) (inmate's release from prison mooted claim for declaratory and injunctive relief); *Wahl v. McIver,* 773 F.2d 1169, 1173 (11th Cir. 1985) ("inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred"); *McKinnon v. Talladega Cnty.,* 745 F.2d 1360, 1363 (11th Cir. 1984) ("The general rule is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief.").

There is no dispute that Plaintiff was transferred from SRCI after the December 2018 incident of which he complains. Moreover, there is no suggestion that Plaintiff will be returned to that prison in the near future. Accordingly, Plaintiff's claim for declaratory relief (Doc. 9 at 10) is moot and must be dismissed. The case should continue with respect to Plaintiff's claim for damages. (*See id*. at 9).

## III.  Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that Defendant Speer's Motion for Summary Judgment, (Doc. 44), be **DENIED** and that Plaintiff's request for declaratory relief be **DISMISSED** as **MOOT.**

At Pensacola, Florida this 4th day of April 2023.

/s/ *Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge

## **NOTICE TO THE PARTIES**

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.  **Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control**.  An objecting party must serve a copy of the objections on all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**